IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 25-cv-03660-PAB

ISSAM MOHAMAD TAMAYZA FADWA

    Petitioner,

v.

TODD M. LYONS, in his official capacity as Acting Director, U.S. Immigration and Customs Enforcement,
ROBERT HAGAN, Field Director of the Denver Field Office, and
JUAN BALTAZAR,[1] Warden, Denver Contract Detention Facility,

    Respondents.

---

## ORDER

---

This matter comes before the Court on petitioner Issam Mohamad Tamayza Fadwa's Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 [Docket No. 1]. Respondents filed a response. Docket No. 10. Petitioner filed a reply. Docket No. 11.[2]

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Juan Baltazar is automatically substituted as a party in this action.

[2] Neither party requested a hearing on this matter. A federal court is not required to hold a hearing on a habeas petition. *See Semien v. United States*, 746 F. App'x 303, 308 (5th Cir. 2018) ("A federal habeas court is not required to conduct an evidentiary hearing."); *Erikson v. Rowland*, 991 F.2d 803, 1993 WL 128865, at *4 (9th Cir. Apr. 26, 1993) (unpublished table decision) ("The district court is not required to hold an evidentiary hearing when considering habeas corpus petitions."); *Davis v. Kobach*, 2023 WL 2375111, at *5 (D. Kan. Mar. 6, 2023) ("Petitioner . . . has no right to a hearing in a federal habeas matter, nor is it standard practice for the Court to hold such hearings.").

## I. BACKGROUND[3]

On October 15, 2024, petitioner Issam Mohamad Tamayza Fadwa entered the United States at the southern border, without proper documentation, and was detained by Immigration and Customs Enforcement ("ICE") near Otay Mesa, California. Docket No. 1 at 9, ¶ 32; Docket No. 10-1 at 2; ¶ 4. Mr. Fadwa is Palestinian, and the United States considers him to be stateless. Docket No. 1 at 9, ¶ 31. He is currently being detained at the ICE contract detention facility in Aurora, Colorado ("Aurora CDF").[4] Docket No. 10-1 at 2, ¶ 3. On October 16, 2024, Customs and Border Patrol issued a notice and order of expedited removal pursuant to 8 U.S.C. § 1225(b)(1). *Id.*, ¶ 8. Mr. Fadwa subsequently claimed fear of persecution and sought asylum in the United States. *Id.* at 3, ¶ 10. U.S. Citizenship and Immigration Services conducted a "credible fear" interview, where Mr. Fadwa described the violence he experienced living in the West Bank and expressed a fear of the Israeli government and Palestinian terrorist groups. Docket No. 1-2 at 15-21, 29-35. Asylum officers found that Mr. Fadwa did not establish a risk of persecution based on his race, religion, nationality, political opinion, or membership in a particular social group. *Id.* at 41-45. Mr. Fadwa requested that an immigration judge review the determination. *Id.* at 42. On February 7, 2025, an immigration judge affirmed the negative credible fear determination, making Mr. Fadwa's order of removal administratively final. Docket No. 10-1 at 4, ¶¶ 17-18.

After Mr. Fadwa's order of removal became administratively final, ICE attempted to remove Mr. Fadwa to the Palestinian Territories. *Id.*, ¶ 19. Because no commercial

---

[3] The following facts are undisputed unless otherwise noted.
[4] Although the parties refer to this facility as the Denver Contract Detention Facility, Docket No. 1 at 1, ¶ 1; Docket No. 10 at 4, it is located in Aurora, Colorado.

airlines fly to the Palestinian Territories, ICE air operations attempted to coordinate a Special High-Risk Charter ("SHRC") flight to a neighboring country. *Id.* at 4-5, ¶¶ 19, 20. On March 15, 2025, while coordinating an SHRC flight, ICE contacted Turkey, Israel, and Lebanon about accepting Mr. Fadwa. *Id.* at 5, ¶ 21. ICE has not received responses from these countries. *Id.* On April 24, 2025, Mr. Fadwa was transferred to a processing center in El Paso, Texas for staging for removal to the Palestinian Territories. *Id.*, ¶ 22. ICE was unable to coordinate the SHRC flight and, on May 6, 2025, transferred Mr. Fadwa back to the Aurora CDF. *Id.*, ¶ 23. On May 28, 2025, ICE submitted a travel document application to the Israeli government on Mr. Fadwa's behalf. *Id.* at 5-6, ¶ 25. If issued, the travel document would allow Mr. Fadwa to travel to Israel so that he could be escorted to the Palestinian Territories. *Id.* at 6, ¶ 25. ICE followed up on the status of the travel document in July, September, October, and November, but the Israeli government has not reviewed the application. *Id.*, ¶ 26. The Israeli government generally takes between 90 and 180 days to review travel document applications. *Id.* If the travel document is issued, ICE intends to remove Mr. Fadwa by having him fly into the Ben Gurion Airport in Tel Aviv and escort him through Israel to the West Bank or Gaza. *Id.*, ¶ 27.

On November 13, 2025, Mr. Fadwa filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. *See* Docket No. 1. Mr. Fadwa brings a claim for violation of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1231(a) (Count One); a substantive due process claim (Count Two); a claim that he should be released under *Zadvydas v. Davis*, 533 U.S. 678 (2001) (Count Three); a procedural due process claim

(Count Four); and a claim for violation of the INA, 8 U.S.C. § 1231(b) (Count Five). *See id.* at 9-14, ¶¶ 37-62.

## II. LEGAL STANDARD

### A. Postremoval Detention

When a noncitizen is ordered removed from the United States, removal should ordinarily be effectuated within a period of 90 days, known as the removal period. 8 U.S.C. § 1231(a)(1); *see also Morales-Fernandez v. I.N.S.*, 418 F.3d 1116, 1123 (10th Cir. 2005). During the removal period, the noncitizen must be detained. 8 U.S.C. § 1231(a)(2)(A). After the removal period has expired, the noncitizen "may be detained." 8 U.S.C. § 1231(a)(6). In *Zadvydas*, the Supreme Court considered whether this language permitted indefinite detention. The Court noted that, "while 'may' suggests discretion, it does not necessarily suggest unlimited discretion. In that respect the word 'may' is ambiguous." 533 U.S. at 697. The Court did not find evidence that demonstrated congressional intent to authorize indefinite detention. *Id.* at 699. Additionally, the Court observed that:

> A statute permitting indefinite detention of an alien would raise a serious constitutional problem. The Fifth Amendment's Due Process Clause forbids the Government to "depriv[e]" any "person . . . of . . . liberty . . . without due process of law." Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects.

*Id.* at 690 (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)). The Court "interpret[ed] the statute to avoid a serious constitutional threat" and "conclude[d] that, once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699.

Recognizing the traditional deference shown to the executive branch in foreign policy, *Zadvydas* found it "practically necessary to recognize some presumptively reasonable period of detention." *Id.* at 700-01.  The Court held that it is presumptively reasonable to detain a noncitizen for six months to effectuate removal.  *Id.* at 701.  After six months, the noncitizen challenging detention bears the initial burden to "provide[ ] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future."  *Id.*  Once he does so, "the Government must respond with evidence sufficient to rebut that showing."  *Id.*  If the government meets its burden, continued detention is permitted; however, if the government fails to demonstrate a significant likelihood of removal in the reasonably foreseeable future, the noncitizen must be released.  *Id.*

*Zadvydas* dealt with a noncitizen who was deemed removable after gaining admission to the United States.  *Id.* at 682.  However, its holding has since been expanded to apply to noncitizens who are deemed inadmissible.  *Clark v. Martinez*, 543 U.S. 371, 378-379 (2005); *see also Morales-Fernandez*, 418 F.3d at 1123-24 (noting that *Clark* expanded the holding of *Zadvydas* to apply to inadmissible noncitizens and granting an inadmissible noncitizen's habeas petition).

### B. Removal under 8 U.S.C. § 1231(b)(2)

Section 1231(b)(2) of Title 8 provides guidelines for determining which countries a noncitizen may be removed to.  As relevant here, § 1231(b)(2) provides:

**(2) Other aliens**

Subject to paragraph (3)--

**(A) Selection of country by alien**

5

Except as otherwise provided in this paragraph--

**(i)** any alien not described in paragraph (1) who has been ordered removed may designate one country to which the alien wants to be removed, and

**(ii)** the Attorney General shall remove the alien to the country the alien so designates.

**(B) Limitation on designation**

An alien may designate under subparagraph (A)(i) a foreign territory contiguous to the United States, an adjacent island, or an island adjacent to a foreign territory contiguous to the United States as the place to which the alien is to be removed only if the alien is a native, citizen, subject, or national of, or has resided in, that designated territory or island.

**(C) Disregarding designation**

The Attorney General may disregard a designation under subparagraph (A)(i) if--

**(i)** the alien fails to designate a country promptly;

**(ii)** the government of the country does not inform the Attorney General finally, within 30 days after the date the Attorney General first inquires, whether the government will accept the alien into the country;

**(iii)** the government of the country is not willing to accept the alien into the country; or

**(iv)** the Attorney General decides that removing the alien to the country is prejudicial to the United States.

**(D) Alternative country**

If an alien is not removed to a country designated under subparagraph (A)(i), the Attorney General shall remove the alien to a country of which the alien is a subject, national, or citizen unless the government of the country--

>> **(i)** does not inform the Attorney General or the alien finally, within 30 days after the date the Attorney General first inquires or within another period of time the Attorney General decides is reasonable, whether the government will accept the alien into the country; or
>
>> **(ii)** is not willing to accept the alien into the country.
>
> **(E) Additional removal countries**
>
> If an alien is not removed to a country under the previous subparagraphs of this paragraph, the Attorney General shall remove the alien to any of the following countries:
>
>> **(i)** The country from which the alien was admitted to the United States.
>
>> **(ii)** The country in which is located the foreign port from which the alien left for the United States or for a foreign territory contiguous to the United States.
>
>> **(iii)** A country in which the alien resided before the alien entered the country from which the alien entered the United States.
>
>> **(iv)** The country in which the alien was born.
>
>> **(v)** The country that had sovereignty over the alien's birthplace when the alien was born.
>
>> **(vi)** The country in which the alien's birthplace is located when the alien is ordered removed.
>
>> **(vii)** If impracticable, inadvisable, or impossible to remove the alien to each country described in a previous clause of this subparagraph, another country whose government will accept the alien into that country.

8 U.S.C. § 1231(b)(2).

The Supreme Court observed that:

> The statute . . . provides four consecutive removal commands: (1) An alien shall be removed to the country of his choice (subparagraphs (A) to (C)),

> unless one of the conditions eliminating that command is satisfied; (2) otherwise he shall be removed to the country of which he is a citizen (subparagraph (D)), unless one of the conditions eliminating that command is satisfied; (3) otherwise he shall be removed to one of the countries with which he has a lesser connection (clauses (i) to (vi) of subparagraph (E)); or (4) if that is "impracticable, inadvisable, or impossible," he shall be removed to "another country whose government will accept the alien into that country" (clause (vii) of subparagraph (E)).

*Jama v. Immigr. & Customs Enf't*, 543 U.S. 335, 341 (2005).

## III. ANALYSIS

Respondents argue that *Zadvydas* set a "unitary due process standard" and that any substantive due process claims should be analyzed under that standard. Docket No. 10 at 2. Because the Court will grant habeas relief on Mr. Fadwa's *Zadvydas* claim, it need not address his other claims or determine the appropriate standard for analyzing those claims.[5] However, Mr. Fadwa's fifth claim—that respondents failed to adhere to the framework set out in § 1231(b)(2)—relates to his *Zadvydas* claim.[6] Thus, the Court will first analyze Mr. Fadwa's fifth claim to the extent it relates to his *Zadvydas* claim.

---

[5] *See Banks v. Dretke*, 540 U.S. 668, 689 n.10 (2004) (finding it unnecessary to address an additional claim in a habeas petition after granting full relief on one claim because "any relief [petitioner] could obtain on that claim would be cumulative."); *Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 445 (1988) (stating that "[a] fundamental and longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them."); *Scott v. Mullin*, 303 F.3d 1222, 1232 (10th Cir. 2002) (declining to address the remaining claims in a habeas petition after already granting habeas relief on one claim).

[6] If respondents attempted to remove Mr. Fadwa to an improper country under the framework set out under § 1231(b)(2), removal to that country would be impermissible and would not be evidence that there is a significant likelihood of removal in the reasonably foreseeable future.

### A. **Where to Remove Mr. Fadwa under § 1231(b)(2)**

While attempting to remove Mr. Fadwa to the Palestinian Territories, respondents also sought to remove Mr. Fadwa to Turkey, Israel, or Lebanon. Docket No 10-1 at 5, ¶ 21. This is not in accordance with the requirements of § 1231(b)(2). [7] As discussed above, § 1231(b)(2) first requires respondents to remove Mr. Fadwa to a country of his choice, unless one of the conditions eliminating that command is satisfied. *Jama*, 543 U.S. at 341. Here, the government does not allege whether Mr. Fadwa has designated such a country. If Mr. Fadwa did not make such a designation, or if that country did not promptly inform the Attorney General that it would accept Mr. Fadwa, the government would next have to try to remove Mr. Fadwa to the country of which he is a citizen. *Id.* Mr. Fadwa alleges that he is a citizen of Palestine and respondents acknowledge that he "possesses a passport or travel document issued by the Palestinian Authority." Docket No. 1 at 9, ¶ 31; Docket No. 10-1 at 2, ¶ 6. Mr. Fadwa is not a citizen of any other country. Docket No. 1-2 at 11-12. Thus, respondents must remove Mr. Fadwa to Palestine, unless the Palestinian Authority fails to inform the Attorney General or Mr. Fadwa whether it will accept Mr. Fadwa within 30 days after the Attorney General inquires or unless it is not willing to accept Mr. Fadwa. 8 U.S.C. § 1231(b)(2)(D). Respondents do not allege whether the Palestinian Authority is willing to accept Mr.

---

[7] Section 1231(b)(2) provides the standard for all noncitizens, except noncitizens "who arrive[ ] at the United States and with respect to whom proceedings under section 1229a of this title were initiated at the time of such [noncitizen's] arrival." 8 U.S.C. § 1231(b)(1)(A). Section 1229a governs general removal proceedings. *See* 8 U.S.C. § 1229a. Here, Mr. Fadwa was not put in general removal proceedings under § 1229a, but is subject to expedited removal proceedings under 8 U.S.C. § 1225(b)(1). Docket No. 10-1 at 2, 4, ¶¶ 8, 18. Thus, 8 U.S.C. § 1231(b)(2) governs his case.

Fadwa.  If it is, and if it informed the Attorney General or Mr. Fadwa of that fact in the appropriate time period, then respondents must remove Mr. Fadwa to Palestine.

If the Palestinian Authority is not willing to accept Mr. Fadwa, or if it did not inform the Attorney General that it would accept him in the appropriate time period, then respondents may remove Mr. Fadwa to any country with which he has a lesser connection, as governed by 8 U.S.C. § 1231(b)(2)(E)(i)-(vi).  As relevant here, this list includes the country where Mr. Fadwa was born.  § 1231(b)(2)(E)(iv).  Mr. Fadwa was born in Bethlehem.  Docket No.1-2 at 12; Docket No. 10-1 at 2, ¶ 6.  Only if it is impracticable, inadvisable, or impossible to remove Mr. Fadwa to any country listed in 8 U.S.C. § 1231(b)(2)(E)(i)-(vi) would respondents be able to remove him to "another country whose government will accept [him] into that country."[8]  8 U.S.C. § 1231(b)(2)(E)(vii).  Here, respondents do not allege that Turkey, Israel, or Lebanon are countries with which Mr. Fadwa is connected to pursuant to 8 U.S.C. § 1231(b)(2)(E)(i)-(iv).[9]  Thus, Mr. Fadwa cannot be removed to these countries unless it is impracticable, inadvisable, or impossible to remove him to Palestine (or any other country that fits the requirements of 8 U.S.C. § 1231(b)(2)(E)(i)-(iv)).  But respondents

---

[8] Respondents can remove Mr. Fadwa to Palestine even if the Palestinian Authority has not given its consent.  *See generally Jama*, 543 U.S. at 348.  Thus, if the Palestinian Authority did not give its consent, that does not necessarily mean respondents move on to next step of the § 1231(b)(2) framework.  *See id.*

[9] Section 1231(b)(2)(E)(iii) allows for possible removal to "[a] country in which the [noncitizen] resided before the [noncitizen] entered the country from which the [noncitizen] entered the United States."  Turkey might qualify as such a country, because Mr. Fadwa's passport has an expired Turkish visa bearing Mr. Fadwa's identity.  Docket No. 10-1 at 2, ¶ 6.  However, respondents do not allege that Turkey is a country to which Mr. Fadwa could be removed under § 1231(b)(2)(E)(iii), and the Turkish visa does not definitively prove that Mr. Fadwa resided in Turkey.  Indeed, Mr. Fadwa claims he has not lived anywhere outside of Palestine.  Docket No. 1-2 at 33.

do not argue that removal to Palestine is impracticable; in fact, they argue just the opposite. Docket No. 10 at 8-10. Thus, it would be improper to remove Mr. Fadwa to Turkey, Lebanon, or Israel at this time.

To their credit, respondents claim that ICE does not plan to remove Mr. Fadwa to a third country. *Id.* at 12. Instead, respondents state that they intend to "remove Petitioner to the Palestinian Territories by means of travel through Israel." *Id.* However, ICE solicited Turkey, Israel, and Lebanon to accept Mr. Fadwa into their countries. Docket No. 10-1 at 5, ¶ 21. Because removal to those countries would be improper under § 1231(b)(2), the Court will not consider those efforts in determining whether there is a significant likelihood of removal in the reasonably foreseeable future.

### B. Constitutionality of Continued Detention under *Zadvydas*

Mr. Fadwa has been detained for over ten months since his order of removal became administratively final on February 7, 2025. Thus, the presumptively reasonable six-month timeframe for effectuating his removal under *Zadvydas* has expired. Still, the expiration of the six-month timeframe does not necessarily mean Mr. Fadwa must be released. *Zadvydas*, 533 U.S. at 701. Instead, Mr. Fadwa has the initial burden to provide the Court with "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* This standard does not require Mr. Fadwa to "show the absence of *any* prospect of removal—no matter how unlikely or unforeseeable." *Id.* at 702. Rather, he simply must show that removal is not significantly likely in the reasonably foreseeable future. *Id.* at 701.

Mr. Fadwa argues that the government's inability to remove him over the past nine months[10] indicates that removal is not significantly likely in the reasonably foreseeable future.  Docket No. 1 at 12, ¶ 52.  This is particularly true because, under *Zadvydas*, "as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." 533 U.S. at 701.  Thus, because Mr. Fadwa has been detained for almost four months after the presumptively reasonable timeframe ended, respondents must show that Mr. Fadwa's removal will likely occur in the very near future.  The Court has good reason to believe it will not.  Respondents already made an unsuccessful attempt to remove Mr. Fadwa to the Palestinian Territories on April 24, 2025, when they transferred him to El Paso for a SHRC flight.  Docket No. 10-1 at 5, ¶¶ 20, 22.  Less than two weeks later, respondents gave up on this effort and transferred Mr. Fadwa back to the Aurora CDF.  *Id.*, ¶ 23.  Respondents do not allege that there are continuing efforts to charter a SHRC flight to the Palestinian Territories.  Rather, ICE is now working to coordinate a commercial flight to Tel Aviv, Israel and to escort Mr. Fadwa through Israel to the West Bank or Gaza.  *Id.* at 6, ¶ 27.  To effectuate this plan, ICE needs to receive travel documents from Israel, which it applied for on May 28, 2025.  *Id.* at 5-6, ¶ 25.  ICE claims that these documents are usually issued 90 to 180 days after submitting an application.  *Id.* at 6, ¶ 26.  As of today, it has been 195 days, with no indication that Mr. Fadwa's application will be reviewed anytime soon.  *Id.*  Moreover, ICE does not allege how Mr. Fadwa will be escorted

---

[10] It has now been over ten months since the start of Mr. Fadwa's post-removal detention.

from Tel Aviv to the West Bank or Gaza, which could prove challenging due to the ongoing conflict.  *See* Docket No. 1-2 at 29-32.  In fact, ICE does not allege that the Palestinian Authority has agreed to accept Mr. Fadwa at all.  Thus, the Court has good reason to believe that Mr. Fadwa will not be removed in the reasonably foreseeable future.  Therefore, the burden shifts to respondents to present sufficient evidence to show that removal is likely.  *Zadvydas*, 533 U.S. at 701.

Respondents argue that its evidence "demonstrates that ICE has made efforts during the past nine months to effectuate Petitioner's removal."  Docket No. 10 at 9 (citing Docket No. 10-1).  In fact, ICE has made many efforts to remove Mr. Fadwa.  ICE solicited acceptances from Turkey, Israel, and Lebanon (albeit improperly), ICE attempted to charter a SHRC flight to the Palestinian Territories or to a neighboring country, and ICE submitted travel documents to the Israeli government and followed up on its submission on four separate occasions.  Docket No. 10-1 at 5-6, ¶¶ 20-27.  However, *Zadvydas* rejected the proposition that continued detention is permissible "as long as good faith efforts to effectuate . . . deportation continue."  533 U.S. at 702 (internal quotations and citation omitted).  Instead, the government must actually make legitimate progress towards removal.  *See Hassoun v. Sessions*, 2019 WL 78984, at *5 (W.D.N.Y. Jan. 2, 2019) (stating that "the reasonableness of Petitioner's detention turns on whether and to what extent the government's efforts are likely to bear fruit.  Diligent efforts alone will not support continued detention.").

Here, respondents have not provided evidence indicating that its efforts are likely to succeed in effectuating Mr. Fadwa's timely removal.  While ICE followed up

13

with Israel on the status of Mr. Fadwa's travel documents four separate times, respondents do not claim that Israel ever responded to that outreach. Docket No. 10-1 at 6, ¶ 26. Moreover, the lengthy timeframe in which Israel typically responds has already lapsed. *Id.* And while ICE claims that it plans to coordinate Mr. Fadwa's removal by flying him to Tel Aviv and escorting him to the West Bank or Gaza, it does not provide any details on how that plan would be effectuated. *Id.*, ¶ 27. ICE does state that it successfully removed multiple Palestinians in this manner in Fiscal Year 2025, but it does not provide any details as to how those removals occurred or give any reason to believe that Mr. Fadwa is similarly situated. Docket No. 10-1 at 6, ¶ 28. Nor does ICE claim that the Palestinian Authority is willing to accept Mr. Fadwa. Although ICE claims that removal is significantly likely in the near future, it has received no response from any country regarding Mr. Fadwa's acceptance and offers no concrete plan for removal even if travel documents were issued.

ICE offers to update the Court in thirty days on its efforts to remove Mr. Fadwa to the Palestinian Territories. *Id.*, ¶ 29. However, there is no reason for the Court to believe removal would be any closer in 30 days when respondents' diligent efforts have not led to Mr. Fadwa's removal in the past ten months. Other courts have granted habeas petitions under *Zadvydas* when the government has not offered evidence that there is progress towards removal. *See S.F. v. Bostock*, 2025 WL 2841022, at *4 (D. Or. Oct. 7, 2025) (finding the government's evidence that the petitioner "could be a candidate" for a scheduled charter flight to Iran "speculative" and "insufficient to rebut Petitioner's showing that removal is not significantly likely

14

within the reasonably foreseeable future."); *Vaskanyan v. Janecka*, 2025 WL 2014208, at *5 (C.D. Cal. June 25, 2025) (finding that petitioner's pending citizenship application to Armenia was insufficient to rebut petitioner's showing even when "the government may receive a response from Armenia in the near term"); *Hassoun*, 2019 WL 78984, at *5 (finding that the government had not met its burden when it had four requests for travel documents from third countries pending for about five months and only made "general and vague" assertions regarding the status of those requests). Here, while respondents have provided evidence that they are making efforts to effectuate removal, they have not provided evidence that removal is likely in the reasonably foreseeable future. Therefore, respondents have not met their burden under *Zadvydas*. Mr. Fadwa's continued detention is therefore unconstitutional. Accordingly, the Court will grant Mr. Fadwa's habeas petition and order his release pursuant to 28 U.S.C. § 2241(c)(3).

### C. Additional Relief

Besides seeking release from detention, Mr. Fadwa asks the Court to do the following:

1. Assume jurisdiction over this matter;
2. Issue an order under the All Writs Act that Petitioner not be removed from this District while this petition is pending;[11]
3. Declare that Mr. Fadwa's detention violates the Due Process Clause of the Fifth Amendment to the U.S. Constitution;
4. Declare that Mr. Fadwa's detention violates the Immigration and Nationality Act;

---

[11] Mr. Fadwa requests that the Court invoke the All Writs Act, 28 U.S.C. § 1651(a), to prevent any transfer of Mr. Fadwa out of the District of Colorado during the pendency of his habeas petition. Docket No. 1 at 4, ¶¶ 17-19. This request is moot, given that the Court will grant the petition.

5. Preclude Respondents from removing Mr. Fadwa to a third country without following proper procedures;
6. Grant attorneys' fees and costs of this suit under the Equal Access to Justice Act, 5 U.S.C. § 504 and 28 U.S.C. § 2412(2), *et seq.*

Docket No. 1 at 15.

Mr. Fadwa's fifth form of relief, seeking to "[p]reclude Respondents from removing Mr. Fadwa to a third country without following proper procedures," is not available as a form of relief under 28 U.S.C. § 2241. A "petition for writ of habeas corpus is only available to challenge the fact or duration of confinement." *Basri v. Barr*, 469 F. Supp. 3d 1063, 1066 (D. Colo. 2020). Therefore, Mr. Fadwa's request that respondents follow "proper procedures" before removing him to a third country is outside the relief available on a petition for writ of habeas corpus. "The habeas statute, 28 U.S.C. § 2241, grants federal courts the power to enforce the right of personal liberty by granting release or order of bond hearing, but does not create other injunctive powers in the federal courts." *Rios v. Noem*, 2025 WL 3141207, at *4 (S.D. Cal. Nov. 10, 2025) (granting petitioner's petition for writ of habeas corpus and ordering that petitioner be released from immigration custody, but declining to enter "three forms of injunctive relief requiring Respondents to comply with the law") (citing *Fay v. Noia*, 372 U.S. 391, 430-31 (1963)).

Mr. Fadwa's requests for declaratory relief—seeking a declaration that his detention violated the Fifth Amendment and the INA—are moot because the Court will order respondents to release Mr. Fadwa. A "declaratory relief claim is moot if the relief would not affect the behavior of the defendant toward the plaintiff." *Robert v. Austin*, 72 F.4th 1160, 1164 (10th Cir. 2023) (citation omitted). However, such claims are not moot if "(1) secondary or collateral injuries survive after resolution of

16

the primary injury; (2) the issue is deemed a wrong capable of repetition yet evading review; (3) the defendant voluntarily ceases an allegedly illegal practice but is free to resume it at any time; or (4) it is a properly certified class action suit." *Riley v. I.N.S.*, 310 F.3d 1253, 1257 (10th Cir. 2002) (internal quotation and citations omitted). A declaration that Mr. Fadwa's detention was unlawful would not affect respondents' behavior toward Mr. Fadwa now that he has been ordered released, and the Court does not find, and Mr. Fadwa does not argue, that any of the mootness exceptions apply. *See Vaupel v. Ortiz*, 244 F. App'x 892, 896 (10th Cir. 2007) (unpublished) (holding that petitioner's declaratory claims for relief were moot after petitioner's release and deportation, declining "to issue an advisory opinion regarding the legality of [petitioner's] detention, because a declaratory judgment on that question would have no meaningful effect on the Department of Homeland Security's future conduct towards him") (internal quotation, alteration, and citation omitted); *A.N.M.L. v. Garland*, 2021 WL 1853577, at *2 (S.D. Cal. May 10, 2021) (finding that petitioner's request for a declaration that her detention violated the law was moot upon petitioner's release from DHS custody).

As for Mr. Fadwa's request for attorneys' fees, the Court will not consider the request because Mr. Fadwa fails to comply with the Local Rules of the District of Colorado. A motion for attorneys' fees must be filed in accordance with D.C.COLO.LCivR 54.3. *See* D.C.COLO.LCivR 54.3 ("Unless otherwise ordered, a motion for attorney fees shall be supported by affidavit....The Motion shall include...for each person for whom fees are claimed: (1) a summary of relevant qualifications and experience; and (2) a detailed description of the services

17

rendered, the amount of time spent, the hourly rate charged, and the total amount claimed.").

## IV.  CONCLUSION

Therefore, it is

**ORDERED** that the Verified Petition for Writ of Habeas Corpus [Docket No. 1] is **GRANTED**.  It is further

**ORDERED** that Mr. Fadwa shall be released from custody on or before **December 23, 2025**.  It is further

**ORDERED** that respondents shall submit a status report on or before **December 23, 2025**.

DATED December 9, 2025.

BY THE COURT:

s/ Philip A. Brimmer
PHILIP A. BRIMMER
Chief United States District Judge